```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

                                    )
UNITED STATES OF AMERICA            )
                                    )
           v.                       )    Crim. No.  05-10224-GAO
                                    )
JC ANDERSON,                        )
           Defendant.               )
                                    )
```

## GOVERNMENT'S MOTION IN LIMINE TO INTRODUCE
## EVIDENCE OF DEFENDANT'S PRIOR DRUG ACTIVITY

The United States, by and through its undersigned attorneys, hereby moves in limine to introduce at trial evidence of prior drug activity of defendant JC Anderson.  This evidence is intrinsic to the conspiracy charged and therefore admissible without regard to the strictures of Rule 404(b).  Even assuming, however, that Rule 404(b) controls, the evidence is probative of the defendant's knowledge about and participation in the charged conspiracy, and his intent to distribute the cocaine base he possessed and thus should be admitted under that rule.  Finally, the government expects that this evidence will also be admissible to corroborate the testimony of its cooperating witness after his credibility has been attacked by the defendant.  Because the additional evidence is admissible on any one of these three bases, the government's motion in limine should be allowed.

## BACKGROUND

### 1. March 30, 2005 CW Purchased 28.14 Grams of Cocaine Base from Anderson

This investigation commenced in December, 2004 when Brockton Police Detective David Delehoy and Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Robert White met with a cooperating witness to discuss drug and firearm trafficking in the Brockton area. The government's cooperating witness ("CW") indicated that he met JC Anderson ("Anderson") prior to November, 2004. The CW knew Anderson to be a crack cocaine dealer.

During conversations with Anderson on March 30 and 31, the CW and Anderson agreed to meet at the Top Notch Cutz Barbershop, 553 Forest Avenue, Brockton, MA for Anderson to sell the CW one ounce of crack cocaine for $1,000. The CW was subsequently searched with negative results, equipped with an F-bird digital recorder, and given $1,000 in ATF funds.

On March 31, at approximately 4:35 p.m., surveillance agents observed the CW arriving at the Top Notch Cutz parking lot. During the same time, a black Pontiac Grand Prix MA license plate 87AJ48 arrived in the parking lot. Detective Delehoy was familiar with Anderson and recognized him exiting the driver's seat of the Pontiac. Anderson was observed approaching the CW car speaking with the CW through the window. According to the CW, he paid Anderson the $1,000 at that time. Anderson is recorded as saying that it (crack cocaine) would arrive shortly.

At approximately 5:05 p.m., a Honda Accord (MA 75RZ40), registered to JC Anderson at 17 Sherwood Drive, Apartment 4, Taunton, MA, arrived in the parking lot of Top Notch Cutz. Detective Delehoy was familiar with the driver of the vehicle, who he identified as Randy Wilson. Wilson was observed speaking with the CW through the open driver window of the CW car, and then Wilson entered Top Notch Cutz.

At approximately 5:08 p.m., Anderson received a call on his Nextel direct connect, which Special Agent White heard while listening to the monitoring unit that was previously placed on the CW. The person on the other end of the telephone line stated that he would be there in five minutes.

At approximately 5:14 p.m., surveillance observed a Chevrolet Suburban (MA 55YN31) arrive at the Top Notch Cutz parking lot. Detective Delehoy recognized the driver as Amos Gill. At approximately 5:18 p.m., Anderson was observed exiting Top Notch Cutz along with Wilson. Anderson was carrying a yellow potato chip bag. Anderson approached the CW car and gave the CW the bag through the CW's window. After having a conversation about drug dealing, Anderson then returned into Top Notch Cutz.

The CW later turned over the potato chip bag containing eight individually wrapped plastic bags of what appeared to be crack cocaine to law enforcement. The drugs were sent to the Commonwealth of Massachusetts State Laboratory and all 8 bags

tested positive for cocaine and subsequently tested and determined to be cocaine base. The net weight of the bags of cocaine base was 28.14 grams.

There are two videos of the deal: (1) outside surveillance and (2) under dashboard camera. The videos do not capture the exchange as it took place outside of the view of the cameras. However, the CW asked Anderson to come around to show him something inside of the vehicle, so Anderson's face is clearly seen on the video. The outside surveillance video depicts the drug deal from a nearby surveillance vehicle and shows the parties, including Randy Wilson approaching Top Notch Cutz, and the CW's vehicle, and Anderson approaching the CW's vehicle with what appears to be a yellow potato chip bag.

### 2. April 8, 2005, CW Purchased 27.15 Grams of Cocaine Base from Anderson

On April 8, 2005, at approximately 2:30 p.m., the CW placed an unrecorded call monitored by Detective Delehoy to Anderson (508) 726-1018. Anderson informed the CW that he was at Top Notch Cutz, 553 Forest Avenue, Brockton, MA. According to the CW, it was understood that the deal would be for one ounce of crack cocaine in exchange for $1,000. The CW was subsequently searched with negative results, equipped with a Hawk digital audio/video recorder, and given $1,000 in ATF funds.

At approximately 3:04 p.m., the CW arrived at Top Notch Cutz

and Anderson was observed approaching the CW's car.  Detective Delehoy was familiar with Anderson and identified him.  Anderson was recorded saying he had to leave to obtain it (the crack cocaine) and would return in about five minutes.  Surveillance observed Anderson return to Top Notch Cutz.  At approximately 3:07 p.m., surveillance agents observed Anderson exiting the barbershop and entering a light blue Honda Pilot (MA CI947J), which was registered to him, drive away, and then return at approximately 3:29 p.m.  Anderson then exited the Honda and entered the barbershop.  Anderson exited Top Notch Cutz and returned to the CW's vehicle.  According to the CW, Anderson then took the crack cocaine out of his pocket and place it on the front console.  The CW then gave Anderson the $1,000.

The CW later turned over the bag containing what appeared to be crack cocaine to law enforcement.  The drugs were sent to the Commonwealth of Massachusetts State Laboratory and tested positive for cocaine base.  The net weight of the bags of cocaine base was 27.15 grams.

There are four videos of the April 8, 2005 deal: (1) outside surveillance; (2) under dashboard camera; (3) overhead camera; (4) button camera/Hawk (E17 2 clips).  The under dashboard camera clearly shows Anderson's face.  Anderson can be seen taking something out of his pocket (crack cocaine) and placing it on the center console.  The CW's transfer of money to Anderson was not

captured clearly on the recording, but Anderson does appear to reach and then is seen with cash in his hand.

### 3. The Additional Evidence that the Government Seeks to Introduce at Trial

1) In December 2004, the CW met with law enforcement to discuss conversations that he had with Anderson. The CW described that at some time since he began speaking frequently with Anderson in November 2004, he was offered a kilogram of cocaine on several occasions by Anderson and various amounts of crack cocaine from Anderson's associates. The CW further stated that he has observed Anderson and his associates carrying firearms and dealing in narcotics. The CW indicated that he saw these individuals at a local bar.

This evidence is being offered to demonstrate the relationship between the CW and Anderson that led to direct sales by Anderson to the CW. Additionally, the evidence puts into context subsequent discussions between the two parties concerning the CW's intention of getting into the drug business, and Anderson's intention of making more money and getting out of the drug trade.

2) During an interview on August 12, 2005, the CW stated to law enforcement that prior to his involvement with the ATF in November 2004, Anderson showed him $10,000 and offered it

to the CW in discussions concerning a business deal. Anderson described that another way to make money besides promotional events (the business that the CW indicated that he was involved in) was by "breaking down weight". The CW understood this to mean selling cocaine. Anderson further indicated at that time the price that he would charge for an ounce of crack cocaine was $1,000.

This evidence is being offered to demonstrate that a conspiracy existed between Anderson and others to distribute crack cocaine and to corroborate subsequent sales by Anderson to the CW of the same quantity, one ounce, for the same cost, $1,000.

3) On March 30, 2005 the CW stated to law enforcement that he met with Anderson at his barbershop, Top Notch Cutz. Anderson indicated that he had a police officer check the CW's criminal record, and also checked to see if the CW was providing information to law enforcement. Anderson apparently was satisfied with the CW as he stated that he trusted him.

This evidence is being offered to show the efforts that Anderson went to avoid law enforcement detection, which explains the investigators utilizing a CW to investigate him. Moreover, the evidence explains why Anderson subsequently sold crack cocaine in the presence of the CW; discussed his profits from the

drug trade; and sold crack cocaine to the CW the next day, as discussed more fully below.

      4) During the same discussion on March 30, 2005, the CW stated to law enforcement that Anderson told him the he made $100,000 from his narcotics sales in the past six months. Anderson indicated that he invested the money in real estate in Atlanta, Georgia and asked the CW to go to Georgia with him because Anderson wanted the CW's assistance in concert promotion.

    This evidence is being offered to show the extent of Anderson's drug conspiracy.  Additionally, the evidence shows the relationship between the CW and Anderson and puts into context later discussions concerning the trip to Georgia and their business deals.

      5) Also on March 30, 2005, the CW stated to law enforcement that he observed Anderson sell crack cocaine to an unknown black female while he was at his barbershop, Top Notch Cutz.  Following the sale, the CW requested to purchase crack cocaine directly from Anderson.

    This evidence is being offered to show the nature of Anderson's drug conspiracy including the location, and to explain how the CW was able to deal directly with Anderson, instead of with Anderson's associates including the deal the  The evidence

also provides the basis of the deal the following day between the CW and Anderson.

**ARGUMENT**

1. **The evidence of Anderson's previous drug activity is directly relevant to the charged conspiracy.**

The evidence of Anderson's additional drug activity is directly relevant to the conspiracy charged and therefore admissible irrespective of the constraints of Rule 404.

By its terms, Rule 404(b) excludes only extrinsic evidence i.e, "evidence of other crimes, wrongs, or acts" where the probative value of the evidence is limited to the inference of "criminal propensity." United States v. Trinkler, 61 F.3d 45, 56 (1st Cir. 1995). Circumstantial evidence "intrinsic" to the crime for which the defendant is on trial is simply not governed by Rule 404(b). United States v. Tutiven, 40 F.3d 1 (1st cir. 1994). Hence, Anderson's prior drug activity in the weeks and months leading up to the conspiracy is admissible because it is directly relevant to the government's charge that Anderson was involved in cocaine base distribution during the period alleged in the indictment.

The First Circuit has repeatedly recognized the importance of such evidence and its admissibility in drug prosecutions. E.g., United States v. Mojica Baez, 229 F.3d 292, 303 (1st Cir. 2000); United States v. Candelaria-Silva, 162 F.3d 698, 705 (1st

Cir. 1998); Manning, 79 F.3d at 217. Regardless of whether that evidence is admitted as direct evidence of the conspiracy or as 404(b) evidence of Anderson's intent and knowledge, the jury should be entitled to consider it.  See also United States v. Becerra, 97 F.3d 669, 671-72 (2d Cir. 1996)("we have repeatedly approved the admission of firearms as evidence of narcotics conspiracies, because drug dealers commonly keep firearms on their premises as tools of the trade").

Undoubtedly, the defense will argue that any evidence from the time period before the March 30, 2005 to April 8, 2005 – the period of the cocaine conspiracy alleged in the indictment is irrelevant to support the inference that the evidence is part of an ongoing course of conduct or otherwise inextricably bound up in the conspiracy alleged and therefore inadmissible. See United States v. Arias Montoya, 967 F.2d 768 (1st Cir. 1992) (admission of 10-year old conviction under 404(b) was erroneous).  The government disagrees with that contention for the reasons set forth above.

> 2. **The government's evidence of Anderson's additional cocaine base activities is admissible under Rule 404(b) to show knowledge and intent.**

Even if the Court concludes that the government's additional evidence of Anderson's prior drug activities is not intrinsic to the conspiracy alleged, it is still admissible under 404(b) as "other crimes, wrongs, or acts" probative of  motive, intent,

-10-

plan, and knowledge.  See United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996) (evidence of defendant's prior drug dealing "highly probative of the knowledge and intent elements" of drug charge).  Because Anderson is charged with conspiracy, the admissibility of his prior bad acts is governed by the First Circuit's "clear rule" favoring the admission of 404(b) evidence as proof of intent, knowledge, etc.  See United States v. Garcia, 983 F.2d 1160, 1173 (1st Cir. 1993) (collecting cases).[1]

The additional evidence of Anderson's drug activities is admissible because it: (1) has "special relevance" in establishing intent and knowledge, and (2) its probative value is not substantially outweighed by the risk of undue prejudice. United States v. Hadfield, 918 F.2d 987, 994 (1st Cir. 1990).[2]

---

[1] The decision to admit evidence under Rule 404(b) is left to the sound discretion of the trial judge, and will be reversed only for abuse of discretion.  Manning, 79 F.3d at 217 (citation omitted).  In cases, such as this one, where the 404(b) evidence is probative of issues such as knowledge or intent, "the prohibition against admission of character evidence is construed broadly."  Garcia, 983 F.2d at 1172 (citing United States v. Flores Perez, 849 F.2d 1, 4 (1st Cir. 1988)).  "While there is a possibility that jurors may draw impermissible inferences about defendant's character or propensity from the fact of his prior conviction, such a possibility is irrelevant to the first step of the admissibility analysis . . . ."  Id. (citing United States v. Ferrer Cruz, 899 F.2d 135, 138 (1st Cir. 1988)).

[2] Rule 404(b) evidence is deemed to have special relevance if the evidence "would allow a juror to make at least one inference probative" of a material issue.  United States v. Nickens, 955 F.2d 112, 124, 125 (1st Cir.) (citations omitted). In Nickens, the Court of Appeals affirmed the admission of the defendant's prior narcotics convictions, concluding that a
(continued...)

Here, the CW will testify to his previous drug interactions with the defendant, including the specific nature of those activities and the manner in which any drug dealings were carried out. The jury should be permitted to infer that Anderson's prior drug activities with the CW makes it more likely that the defendant intended and planned to distribute cocaine base during the course of the conspiracy, and did so knowingly and intentionally. This evidence simply makes it more likely that Anderson knew about and actively participated in the instant conspiracy. See, e.g., Manning 79 F.3d at 217 (fact that defendant "had previously sold cocaine makes it more likely both that he was aware of the contents of the plastic bags in the briefcase and that he intended to distribute the two bags of cocaine"); Carty, 993 F.2d 1011 (prior drug convictions had "special relevance" to possible intent or plan to distribute).

---

[2] (...continued)
reasonable jury could have inferred that the defendant's prior experience selling cocaine made it more likely that he knew how drug traffickers operate, and therefore less likely that he had been duped by two friendly young men who, according to the defendant, had planted drugs in his suitcase. Id. See also United States v. Moccia, 681 F.2d 61, 63 (1st Cir. 1982) (jury can "infer that one who lives on a farm with marijuana in the freezer room and under the chicken coop and has a prior possession conviction is more likely to know about the presence of marijuana than one who lives on such a farm and does not have a past possession conviction"); United States v. Carty, 993 F.2d 1005, 1011 (1st Cir. 1993)(affirming admission of "bad act" evidence because it "permitted at least one relevant non-propensity and non-character based inference") (citation omitted).

To the extent that Anderson offers a non-criminal reason for his contacts with the CW, the evidence of prior drug interactions with him is admissible for another reason as well. Any testimony about previous drug dealings would contradict this defense, and would permit a jury to appropriately infer that Anderson was an active participant in the conspiracy to distribute cocaine base. Even if Anderson were to offer only a general denial of the charges against him (and did not raise defenses specifically addressed to intent and plan), the United States should still be permitted to introduce evidence of Anderson's additional drug activities to show knowledge, intent, and plan. See United States v. Ferrer-Cruz, 899 F.2d 135, 138-39 (1st Cir. 1990); United States v. Oppon, 863 F.2d 141, 146 (1st Cir. 1988); United States v. LaTorre, 922 F.2d 1, 8 (1st Cir. 1990). Accordingly, the evidence bears "special relevance" to the issues in this case.

Admission of the additional cocaine trafficking evidence will also provide the jury with probative evidence, the value of which is not substantially outweighed by the danger of unfair prejudice.[3] Here, Anderson's drug activities prior to the events

---

[3] In balancing the probative value and risk of undue prejudice of a defendant's prior bad acts, a district court should bear in mind that Rule 404(b) is a rule of inclusion, not exclusion. United States v. Carty, 993 F.2d at 1011 (citations omitted) (emphasis added). Thus, the analysis under Rule 403 is not whether the defendant is prejudiced by the admission of prior
(continued...)

at issue bear heavily on whether the defendant knowingly participated in the charged conspiracy.  See Manning 79 F.3d at 217 (defendant's statements regarding prior drug dealing "highly probative" of knowledge and intent as to drug distribution in present case); Carty, 993 F.2d 1005 (defendant's post-arrest statements relating to cocaine source probative of intent and opportunity to possess and distribute cocaine); Hadfield, 918 F.2d at 995 (defendant's prior narcotics activities of "great" probative value because they relate to knowledge and intent, disputed issues critical to guilt or innocence).

    Moreover, the probative value of the evidence is not substantially outweighed by any risk of unfair prejudice. Although evidence of other drug activities invariably prejudices a defendant, "the prejudice is frequently outweighed by the relevancy of the evidence when a defendant's knowledge or intent is a contested issue in the case."  United States v. Francesco, 725 F.2d 817, 822 (1st Cir. 1984) (citations omitted).  "The fact that a piece of evidence hurts a party's chances does not mean it should automatically be excluded, [or] there would be precious little left in the way of probative evidence in any case."

---

³   (...continued)
convictions, but whether the defendant suffers unfair prejudice. Nickens, 955 F.2d at 125 (citations omitted) (emphasis added). See, e.g., Garcia, 983 F.2d at 1173 (defendant's drug prior arrest admissible because probative value not substantially outweighed by danger of unfair prejudice).

Carty, 993 F.2d at 1011 (quoting Onujiogu v. United States, 817 F.,2d 3, 6 (1st Cir. 1987)).

Finally, the Court can minimize any potential danger of unfair prejudice caused by the admission of this evidence by issuing a limiting jury instruction regarding the proper relevance of the evidence. The First Circuit has approved the use of such limiting instructions as an appropriate means of protecting a defendant against the possibility that a jury might draw improper conclusions from a the admission of prior bad acts evidence.[4]

### 3. **Evidence of Anderson's additional drug activity is admissible because it will corroborate the testimony of a key government witness.**

At trial, the defense may seek to impeach the testimony of

---

[4] See, e.g., Garcia, 983 F.2d at 1173 ("district court handled the prior acts evidence with care, providing the jury with a limiting instruction . . . and again instructing the jury of the scope of prior acts evidence in his final charge."); Nickens, 955 F.2d at 125-126 ("given that the court minimized prejudice to [defendant] by giving clear limiting instructions to the jury, we are satisfied that the district court did not abuse its discretion in admitting the evidence of [defendant's] prior drug conviction."). The limiting jury instructions from Garcia and Nickens, which were approved by the First Circuit, are attached collectively as Attachment 1. With respect to the instructions in Nickens, the First Circuit noted:

> Counsel on both sides expressed their satisfaction with this instruction in a bench conference with the judge. In its final instruction to the jury, the court repeated the same limiting instruction about the prior crimes evidence that it had given before.

Nickens, 955 F.2d at 126.

the government's cooperating witness.  Once the CW's credibility has been called into question, any evidence of Anderson's prior drug dealings is admissible to corroborate his testimony.  For example, the CW is expected to testify about his method, or modus operandi, of dealing the cocaine base.  Once his credibility is called into question by, among other things, cross-examination about her drug-related activities and the government's evidence about what Anderson did both before and during the time of the conspiracy alleged should be admitted.  See United States v. Figueroa, 976 F.2d 1446, 1454 (1st Cir. 1992)(rule 404(b) permits introduction of evidence for purely corroborative purposes on matters "significant to the government's case"); United States v. Blakely, 942 F.2d 1001, 1019 (5th cir. 1995) (once credibility of government witness had been challenged by defense, 404(b) evidence to corroborate was admissible); United States v. Everett, 825 F.2d 658, 660 (2nd Cir.1987) (admitting 404(b) evidence for corroborative purposes where the if the corroboration is "direct and the matter corroborated is significant").  See also United States v. Pitts, 6 F.3d 1366, 1371 (9th cir. 1993) (adopting Everett rule and permitting use of 404(b) evidence to corroborate of government cooperator who had been subject to cross-examination and offered only direct evidence of defendant's involvement in the distribution of cocaine).

## CONCLUSION

Based on the foregoing, the government respectfully requests that it be permitted to offer evidence of Anderson's prior drug activities in evidence at trial.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                By:   /s/ Leah B. Foley
                      LEAH B. FOLEY
                      Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                        Boston, Massachusetts

    I, Leah B. Foley, do hereby certify that I have served the copy of the foregoing to defense counsel of record by efiling, and by hand.

                                            /s/ Leah B. Foley
                                           LEAH B. FOLEY

Dated:   August 24, 2006

**LIMITING RULE 404(b) JURY INSTRUCTION**

United States v. Garcia, 983 F.2D 1160, 1171-1172 (1ST Cir. 1993):

> . . . Mr. Foreman and members of the jury, sometimes evidence is admissible for one purpose, but it's not admissible for another purpose. So, the Court has to allow the evidence in because it's relevant on some point in the case. But I have to advise you, as jurors, that you can't consider it on some other point in the case.
>
> The rule of evidence that's involved is rule 404(b) which relates to other crimes or wrongs, prior bad acts as it's often referred to. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. That's the rule. What it means is that, in a criminal trial for an offense you can't bring in evidence of other offenses, just to show that the defendant is a bad person and is likely to have committed this offense. That's not admissible for that purpose. However, it is admissible to show knowledge or intent or plan.
>
> I have ruled that this evidence is admissible in this case against [the defendant] because two of the issues in the case relate to his knowledge and his intent. First of all, he has to have knowing possession of the cocaine in this case, and also, he is charged with not only knowing possession but possession with intent to distribute. And so, this evidence relates to his knowledge about cocaine and whether he knowingly possessed it in that apartment on Gallatin Street, and also, if he possessed it, whether he possessed it with intent to distribute.
>
> So, you may consider this evidence of prior acts by the defendant, [    ], only on the question of his knowledge and intent in this case; and the United States has the burden of proving those elements beyond a reasonable doubt.

**LIMITING RULE 404(b) JURY INSTRUCTION**

<u>United States v. Nickens</u>, 955 F.2d 112, 125-126, n. 8 (1st Cir.):

> I instruct you that evidence of those [defendant's prior drug involvement] is not presented to you and you should not consider it to prove that because defendant was guilty of those charges you are now considering.
>
> The transactions will be presented to you only to show possible knowledge and intent to commit the present offense, and that is all. They are not presented to you to show bad character or a pattern of conduct or propensity to commit this type of crime.