UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 05-10224-GA0 |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| J.C. ANDERSON | ) |  |
| Defendant. | ) |  |
|  | ) |  |

SENTENCING MEMORANDUM
OF J.C. ANDERSON

Now comes the defendant, J.C. Anderson and offers the following sentencing memorandum to the Court.

INTRODUCTION

The key determinations in this case involve the weight of the drugs in question and the defendant's prior convictions. The defendant will also address the sentencing factors this Court should consider pursuant to 18 U.S.C. §3553 and under the now advisory Sentencing Guidelines. For the reasons set forth in this memorandum, Mr. Anderson requests that the Court sentence defendant to the low end of the guidelines or no more than 10 years. Mr. Anderson also requests that the Court indicate what sentence the Court would impose if the Court were not applying the minimum set forth in 21 U.S.C. §841.

I.   Background

On September 5, 2006, J.C. Anderson pled guilty to the following charges: Conspiracy to Distribute Cocaine Base, in violation of 21 U.S.C. §846 (Count 1); and Distribution of Cocaine Base, in violation of 21 U.S.C. §841 (a) (1) (Counts 2-3). Importantly, *he did not plead to a drug weight.*

1

This case arises out of two exchanges of cocaine base for money with a paid informant. On March 31, 2005, the paid informant provided Mr. Anderson with $1,000 and Mr. Anderson provided the informant with a small potato chip bag which contained cocaine base. On April 8, 2005, the paid informant provided Mr. Anderson with $1,000 and Mr. Anderson provided him with a small bag of cocaine base. The co-conspirators, who were the alleged suppliers, were not charged.

At the time of the offense, Mr. Anderson was a part-owner of a barber shop, working regularly as a barber and earning approximately $1100 per week in this legitimate business. He was engaged to his partner of over ten years, Ms. Keona Fernandez, who was working as a certified nurse's assistant. See <u>Exhibit A</u>, Letter from Keona Fernandez. The couple have three children together, ages eight, seven, and three. Ms. Fernandez also has a ten-year-old daughter from a previous relationship. Mr. Anderson actively parents all four children, and was involved in their day-to-day care up until his arrest. Ms. Fernandez indcates that he took the children to school every morning, and did homework with the older children every night. When Ms. Fernandez was placed on bed-rest for over three months during her last pregnancy, he performed all of the parenting duties for all four children single handedly, including preparing their meals, bathing the younger children, and putting them to bed each night. He provided consistent financial support for all of his children.

After the indiscretions of his late teens and early twenties, he led a crime-free life, and has tried to provide a positive role-model in the community by coaching summer basketball leagues. (See <u>Exhibit B</u>, Letter from Jose Monteiro.) The paid informant in this case sought him out. Their initial interactions revolved around the promise of

making extra money through the promotion of local events.  Mr. Anderson was trying to move his family out of Brockton, to what he and his fiancé perceived to be a safer community in Easton, Massachusetts, and was encouraged by the prospect of making extra money through event promotions.  After some time, the informant began to ask Mr. Anderson if he knew anywhere he could obtain drugs and guns.  After several requests, Mr. Anderson finally agreed to check to see if he could obtain drugs for the informant.  In response to these requests, he obtained drugs only twice, exchanges which involved small bags and $1,000 on each occasion.  Mr. Anderson viewed such accommodations of the CI's requests as a favor to someone who he believed to be a potential legitimate business partner in the event promotions business.  He acknowledges that his choice to do so was incredibly foolish, particularly in light of the strides he had made since being released from his incarceration in his early 20's.  However, Mr. Anderson did draw a clear moral line when the CI asked him if he knew where to obtain firearms.  For example, on the date of both sales charged in this case, the CI asked Mr. Anderson where he could obtain firearms and each time Mr. Anderson unequivocally refused.

Since his incarceration, Mr. Anderson has maintained a close relationship with his family.  His partner visits him weekly.  He often calls his children to help them with their homework over the phone.  He feels great remorse over his mistake and feels profound guilt over not being available to parent his children.

II. <u>The Weight of Drugs in This Case is 48.24 Grams, as Will be Testified To at the Sentencing Hearing</u>

Mr. Anderson *did not* plea to a drug weight at the change of plea hearing.  As previously indicated at this plea hearing and as discussed in the Pre-Sentence Report, the Commonwealth State Police Laboratory weighed the drugs and arrived at one weight,

3

while Harvey Cohen, Ph.d., the Chemist retained by the defense tested the drugs and arrived at a significantly different weight.[1]  The Commonwealth of Massachusetts State Laboratory found the total amount to be 55.29 grams.  However, when the drugs were weighed by the certified chemist retained by the defense, the weight was found to total 48.24 grams – revealing significant difference of 7.05 grams. Importantly, the government has indicated that it **will not** offer **any testimony** regarding the weight found by the Commonwealth Laboratory the sentencing hearing.   In other words, the Commonwealth will not rebut the finding of the certified chemist retained by the defendant.  Defendant asserts, accordingly, that 48.24 grams is weight the Court should find under the preponderance of the evidence standard.[2]   The mandatory minimum for under 50 grams of cocaine base is 5 years (or 10 years if 21 U.S.C. §851 is applied. See section III, *infra*.).

**III.**   The Recidivist Enhancement Under 21 U.S.C. § 841(b) Is Unconstitutional On Its Face And As Applied In This Case

The government has filed an information pursuant to 21 U.S.C. §851 charging the defendant with two prior felony drug convictions in 1993. [3]  Mr. Anderson was **seventeen years old** when these crimes were committed.  He pled to them when he was

---

[1] The drugs were tested by Harvey Cohen, Ph.d. who is currently a Certified Chemist III at the Massachusetts Department of Public Health Drug Analysis Laboratory Institute.  See Exhibit C, Report of Harvey Cohen, Ph.d.

[2] In fact, the Defendant asserts that it is not proper for the court to decide a drug amount under the reasoning set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), United States v. Booker , 543 U.S. 220 (2005) and Shepard v. United States, 544 U.S. 13 (2005), which suggest that any fact, including the quantity of drugs, which increases the maximum sentence must be proven to a jury beyond a reasonable doubt. The defendant further argues that because the amount hasn't been proven beyond a reasonable doubt to a jury, he cannot be sentenced to the minimum mandatory sentence.   However, should the Court choose to find a drug amount, defendant asserts that the amount testified to at the sentencing hearing - 48.24 grams - is the amount which should be found by the Court.

[3]  The defendant moved to vacate these convictions.  The district court recently denied this motion Defendant intends to appeal this decision.  The defendant has asserted that he was not advised of his right to a jury trial, nor did he waive these rights.  Defendant asserts that if he is able to vacate this prior conviction, he will return to this Court under 28 U.S.C. §2255 and request re-sentencing.

4

20 years old. As such, this enhancement is based upon a conviction which is ***fourteen years old.*** As the Court knows, such a conviction could not be considered for purposes of calculating Mr. Anderson's criminal history under the Sentencing Guidelines. It is contrary to principles of fundamental fairness as protected by the Fifth Amendment to apply a "recidivist" statute based upon crimes which were committed seventeen years ago. [4]

Additionally, the application of the recidivist enhancement under 21 U.S.C. § 841(b) based on the alleged fact of prior conviction is unconstitutional on its face and as applied in this case because it violates Mr. Anderson's rights under the Fifth and Sixth Amendments of the Constitution. The application of this statutory enhancement depends on the continued vitality of Almendarez-Torres, 523 U.S. 224 (1998), but as Justice Thomas has observed, a majority of the Court now recognizes that Almendarez-Torres was wrongly decided.[5] Shepard v. United States, 125 S. Ct. 1254, 1264 (Thomas, J., concurring). As Justice Thomas explained, the Sixth Amendment ruling of Apprendi v. New Jersey, 530 U.S. 466 (2000), barring increases in the sentencing range based on judge-found facts not proven to the jury beyond a reasonable doubt or admitted by the defendant, should apply equally to facts of prior conviction. Shepard, 125 S. Ct. at 1263 (Thomas, J., concurring); Apprendi, 530 U.S. at 520-21 (Thomas, J., concurring). In this case, defendant has never admitted the alleged prior convictions, and the convictions

---

[4] The first conviction in Brockton District Court, Docket number N0000272475 is characterized in the 21 U.S.C. §851 Information as a conviction for Trafficking Cocaine – a crime for which the district court did not have final jurisdiction. Defendant's understanding is that the charge was amended to a distribution charge.

[5] Importantly, the recent Supreme Court case to address Apprendi/Booker issues, Cunningham v. California, 2007 U.S. LEXIS 1324 at *11 (U.S. Jan. 22, 2007), was a 6-3 decision reiterating the role of the jury and the "beyond a reasonable doubt" standard in sentencing. This suggests that the two newest members of the Court, Justices Alito and Roberts, would increase the number of justices who oppose judicial fact-finding at sentencing hearings by a preponderance of the evidence.

have not been proven to a jury. Application of the recidivist enhancement, therefore, would be unconstitutional. But see, United State v. Ordaz, 398 F. 3d 236, 240-41 (3d Cir. 2005) (ruling, pre-Shepard, that Almendarez-Torres is still good law).

IV.  Mr. Anderson Should Not Be Sentenced Based Upon A Drug Amount Which Has Not Been Proven To A Jury Beyond A Reasonable Doubt

Mr. Anderson did not plead guilty to a drug amount and argues that under Apprendi, 530 U.S. at 466, Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005) and Shepard, 544 U.S. at 13, any fact, including the quantity of drugs, which increases the maximum sentence must be proven to a jury beyond a reasonable doubt. The defendant further argues that because the amount hasn't been proven beyond a reasonable doubt to a jury, he cannot be sentenced to the minimum mandatory sentence.

The First Circuit has decided that drug quantities are not elements of the crime to be proven beyond a reasonable doubt, but sentencing enhancements to be proven by the government by a preponderance of the evidence. United States v. Aitoro, 446 F. 3d 246 (2006). The First Circuit based this decision on a, pre-Booker decision, United States v. Goodine, 326 F. 3d 26 (1st Cir. 2003) which relied on Harris v. United States, 536 US 545 (2002).[6]

The defendant seeks, at a minimum, to preserve his rights to a jury trial under the Sixth Amendment on what he maintains is an element, not a sentencing factor and to request that such an element be decided by proof beyond a reasonable doubt, as required

---

[6] It should be noted that Harris was a 5-4 decision with the majority including Justices Rehnquist and O'Connor. Justices Thomas, Stevens, Souter and Ginsburg, dissented finding that Apprendi meant that any fact other than prior conviction that increased the penalty beyond a statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. In Booker, Justices Scalia and Breyer appear to have adopted the broader view of Apprendi urged by the dissent in Harris.

by the Fifth Amendment. See Booker, 543 U.S. at 319, n6 (Thomas J., dissenting) ("The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant.").[7] The defendant is aware that Almendarez-Torres remains the law of this Circuit and that any enhancement required by a prior conviction need not be proven to a jury beyond a reasonable doubt. The defendant seeks to preserve his objection to this view, given the concurring opinion filed by Justice Thomas in Shepard, 544 U.S. at 27-28 ("The parties do not request it here, but in an appropriate case, this Court should consider Almendarez-Torres ' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of Almendarez-Torres, despite the fundamental imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements.")(internal citations omitted); See also, United States v. Rangel-Reyes, 126 S.Ct. 2873 (2006)(denying a petition for certiorari where Justice Stevens states that he continued to believe that Almendarez-Torres was wrongly decided.)

V.   The Statutory Sentencing Factors Under 18 U.S.C. §3553 Weigh in Favor of Leniency

The primary directive in Section 18 U.S.C. §3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in Section 3553(a)(2). In the post-*Booker* world of federal sentencing, this Court must now consider factors it could not have considered in the past. Specifically, this Court must now consider:

- The nature and circumstances of Anderson's offense;

- Anderson's personal history and characteristics;

- The need for the sentence imposed, in light of:

    o The seriousness of Anderson's offense;
    o Deterrence considerations;
    o Concerns of recidivism; and
    o The need to protect the public from Anderson.

This Court is also free to consider other relevant factors, including those previously discouraged or even forbidden by the Guidelines.

Under 18 U.S.C. §3661, *no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. When applying these factors to Mr. Anderson's case, it becomes clear that a sentence of no more than ten years imprisonment, is more than is sufficient to achieve all of these goals.

Nature And Circumstances Of The Offense

While Mr. Anderson admits the gravity of his crime, he was not a high-level drug dealer, or working as part of a sophisticated drug operation. At the time he was approached by the CI he was first and foremost a barber and an active father struggling to make ends meet. Since his last arrest in 1994 he has worked very hard to get his life on the right path. The CI in this case sought him out under the guise of a legitimate business partner in the promotion of events. Mr. Anderson was hoping to make extra money in this promotion business to allow his family to move out of Brockton. The alleged co-conspirators who the government contends supplied him the drugs were never charged. He sold cocaine base on two occasions separated by over one month, for a total of only

8

$2,000. In between this time he was working legitimately as a barber to support his family.

### History And Characteristics Of The Defendant

Mr. Anderson grew up poor, in housing projects in Boston and Brockton. He was an athlete in high school, graduated high school and started Massasoit Community College. In his late teens he became involved in drug sales. Since the period of his last arrest and incarceration he has led a crime-free life. He started a home improvement business and worked as barber. He has a partner of over ten years and actively parented their four children, taking them to school, and helping with their homework on a daily basis. Mr. Anderson clearly made a mistake in succumbing to the pressure to make some quick money on two occasions, but this was not a way of life for Mr. Anderson.

### Family Circumstances

As noted above, at the time of his arrest he was actively parenting four children. His partner, Ms. Fernandez's is now working two jobs to support the family. Since Mr. Anderson's arrest each of the children are forced to get up at 5:00 in the morning so that their mother can attend her job as a school-bus driver. At 6:00 the children, including the 3 and 5 year old, get on the school bus their mother drives and ride around while she drops off high school students. Then they are all dropped off at day care at 7:30 in the morning. They eat breakfast at day care and finally they start their day at school at 8:00. They are in school until 3:00 and then go back to day care, often until 6. She reports that since Mr. Anderson's incarceration, the school age children's grades have dropped, and their oldest boy has developed behavioral problems.

In addition Ms. Fernandez's sister, who was an anti-violence activist in Brockton,

was recently shot. Ms. Marcia Fernandez started an organization called "Our Positive Posse" which was invited to the White House by President Clinton in recognition for their anti-violence work. In November 2005, tragically, an unknown person came to her home, where her children were playing, knocked on the door, and shot her as the door opened. She is now paralyzed. Ms. Keona Fernandez now goes to her sister's home in the evenings, often taking her four children with her. She feeds her sister, and helps her clean herself on a daily basis.

Mr. Anderson repeatedly expresses his deep regret that he is not there to support his partner in managing a day-to-day life which has become overwhelming. In short, his family is suffering greatly as a result of his continued incarceration.

Deterrence to Criminal Conduct

A sentence of no more than ten years would reflect the seriousness of the offense. Whether a sentence of twenty years would be a greater deterrence to this crime is questionable. A study by Physicians for Human Rights on the New York Rockefeller Drug Laws found that no parallel reduction in drug offending matched the imposition of severe mandatory drug sentences. Physicians for Human Rights, Unjust and Counterproductive—New York's Rockefeller Drug Laws 96 (2004). <http://www.physiciansforhumanrights.org/library/report-2004-juvenile.html.>

Likelihood of Recidivism and Protection of Public

Mr. Anderson is 34 years old, and when he is released from prison he will be significantly older, and much less likely to commit another crime. See United States v. Nellum, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. 2005) (citing Report of U.S. Sentencing Commission, Measuring Recidivism: The Criminal History Computations of the Federal

Sentencing Guidelines, May, 2004, which states," Recidivism rates decline consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates."*)*.

Importantly, despite his bad decision making in getting involved in two drug sales, Mr. Anderson asserted clear moral boundaries when it came to buying, selling, or using firearms. When pressured by the CI to get involved in the procuring of firearms he unequivocally refused. For instance, on March 31, 2004, the CI first approached him about guns. A review of excerpts of the taped conversation reveals the following exchange[8]:

> **CI:** In providence I got X, like a colt 38, or something like that. So I'm really looking for something personal, you know, something small for the girls..
>
> **Anderson:** I don't wanna—tell you the truth, …
>
> **CI**: What, you don't fuck with those things?
>
> **Anderson:** I don't go near those things.
>
> **CI**: You don't fuck with the guns at all?

[The conversation continues…..]

> **CI:** Well what if, just hear me out, what if there's thirty or forty Glocks coming in, and there's some type of way that we can get uh, that we can make some money.
>
> **Anderson**: I'd never touch it.
>
> **CI:** oh, okay.
>
> **Anderson**: There's just some things that I made rules to myself, coming out of the jail gate…
>
> **CI**: uhuh…

---

[8] These excerpts were transcribed by Counsel for Defendant from the videos provided by the Government. See <u>Exhibit D</u>, Affidavit of Jessica Hedges.

11

**Anderson**: Guns just ain't me. You know what I mean? People gotta understand something: the way I look at it, people can take them things and make money off of them all day. But me? I'm only gonna ruin the next man's family. A lot of people need to be dead out there. But do their families need to die?

**CI**: yeah, you're right; same thing we was talking about here.

**Anderson**: yeah, you know? So I just always told myself, guns is not me.

Then, on another occasion the CI again tried to pressure Anderson to get involved in guns, even after his clear refusal the first time. This time the CI stated:

**CI**: On another subject, I know we talked about this before, but if you hear anything, my little guy had problems coming up with some stuff, and he found out these kids was gonna pull a burner out on him. You understand? I know it's not your game, but if you hear anything, you just call me, let me know, and you ain't got to be in the middle of it. I'll go meet whoever. If anybody say anything about that. I just need, just for protection. You know what I mean? Just one word, and I'll be there. That's the bottom line. Other than that…

On this occasion Mr. Anderson simply stopped the conversation by walking away from the CI's car.[9]

IV. <u>Advisory Guideline Range</u>

Pursuant to U.S.S.G. 5Gl.l(b), the guideline imprisonment range would be as follows:

- with a drug quantity under 50 grams of cocaine base, he would have an Total Offense Level of 27 (30 minus 3 for acceptance of responsibility), and a Criminal History Category of II for a **Guideline range of 78-97 months**;

- with a drug quantity over 50 grams of cocaine base, Mr. Anderson would have a Total Offense Level of 29 (32 minus 3 for acceptance of

---

[9] <u>Id</u>.

12

>responsibility and a Criminal History Category of II, for a **Guideline range of 97 to 121 months.**

V.    Conclusion

As noted in the PSR, without the mandatory minimum sentence, the guideline imprisonment range, for a Total Offense Level of 29 and a Criminal History Category of II, would have been 97 to 121 months. His guideline imprisonment range for a drug weight of under 50 grams would have been 78-97 months. Without the application of the 21 U.S.C. §851, based on his fourteen-year-old convictions, Mr. Anderson would not be facing a doubling of the ten year mandatory minimum.

Additionally, if this case were in state court, under the proposed Massachusetts guidelines Mr. Anderson would be faced with a *maximum* sentence of ten years, and a guideline range of 45-67 months (Criminal History Category B, Offense Seriousness level 6).

When the Anti-Drug Abuse Act of 1986 was enacted, Congress intended that drug quantities would serve as a proxy for a defendant's role in the offense. In particular, five-year minimums were supposed to target "managers of the retail traffic" who were "filling the bags of heroin, packaging crack cocaine into vials… and doing so in substantial street quantities"; and ten year minimums were supposed to target "manufacturers or the heads of organizations" who were "responsible for creating and delivering very large quantities of drugs." H.R. Rep. No. 99-845 at 11-12, 16-17 (1986). The deliveries of two small bags of crack to an informant who courted Mr. Anderson's involvement in the drug trade as incidental to a lawful business, hardly falls within this category. A sentence of no

more than ten years would reflect the seriousness of the offense, promote respect for the law and provide just punishment.

For the above stated reasons, the defendant J.C. Anderson respectfully requests this Honorable Court sentence him to no more than ten years. Mr. Anderson requests that the Court request that he serve his sentence at Fort Devens so that he can maintain close contact with his family. Finally, he requests that he be recommended for the five hundred hour residential drug treatment program.

Respectfully submitted,
J.C. ANDERSON, Defendant,
By his attorneys,

//s/Stephen Hrones
Stephen Hrones (BBO No. 242860)
Jessica D. Hedges (BBO No. 645847)
HRONES GARRITY & HEDGES LLP
Lewis Wharf-Bay 232
Boston, MA 02110-3927
(617) 227-4019

CERTIFICATE OF SERVICE

I, Stephen Hrones, hereby certify that. On this the 6th day of February, 2007, I have served a copy of this document, where unable to do so electronically, on all counsel and parties of record in this matter.

//s// Stephen Hrones
Stephen Hrones